IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

Civil Action No. _____

| | |
|---|---|
| HESKA CORPORATION, a Delaware Corporation,<br><br>Plaintiffs,<br><br>v.<br><br>QORVO US, INC., a Delaware Corporation; QORVO BIOTECHNOLOGIES, LLC, a Delaware Limited Liability Company, and ZOMEDICA PHARMACEUTICALS INC., D/B/A/ ZOMEDICA PHARMACEUTICALS CORP., a Delaware Corporation,<br><br>Defendants. | **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** |

Plaintiff Heska Corporation ("Heska"), through its counsel, for its Complaint against Defendants Qorvo US, Inc. ("Qorvo US"), Qorvo Biotechnologies, LLC ("Qorvo Biotech"), (Qorvo US and Qorvo Biotech collectively, "Qorvo") and Zomedica Pharmaceuticals Inc. d/b/a Zomedica Pharmaceuticals Corp. ("Zomedica"), hereby states and alleges as follows:

## NATURE OF THE ACTION

This is an action for damages and injunctive relief premised on Heska's claims against Qorvo US, Qorvo Biotech, and Zomedica.

## PARTIES

1. Plaintiff Heska Corporation is a Delaware corporation with headquarters located at 3760 Rocky Mountain Avenue, Loveland, CO 80538.

2. Defendant Qorvo US, Inc. is a Delaware corporation with headquarters located at

7628 Thorndike Road, Greensboro, NC 27409-9421.

3. Defendant Qorvo Biotechnologies, LLC is a wholly owned subsidiary of Qorvo, Inc. and a Delaware limited liability company with headquarters located at 14505 21st Ave. N., Suite 212, Plymouth, MN 55447.

4. Defendant Zomedica Pharmaceuticals Inc. is Delaware corporation with headquarters located at 100 Phoenix Drive, Ann Arbor, MI 48108.

## JURISDICTION AND VENUE

5. This Court has federal subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Heska asserts a federal claim under the Defend Trade Secrets Act of 2016, codified at 18 U.S.C. § 1831, *et seq.* (the "DTSA"). The Court has supplemental jurisdiction over Heska's remaining claims pursuant to 28 U.S.C. § 1367 because those claims form part of the same case or controversy as the federal question claim.

6. This Court has personal jurisdiction over Qorvo US and Qorvo Biotech under principles of specific and general jurisdiction, as Qorvo US and Qorvo Biotech are headquartered in the State of North Carolina.

7. This Court has personal jurisdiction over Zomedica under principles of specific and general jurisdiction because it conducted business in the State of North Carolina, some of which is the subject of this action, and has sufficient minimum contacts with the State of North Carolina such that exercise of jurisdiction over Zomedica does not offend traditional notions of fair play and substantial justice.

8. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(1).

## GENERAL ALLEGATIONS

**A. Agreements between Heska and RDI.**

9. Heska is in the business of manufacturing and selling supplies and equipment in the veterinary medicine industry.

10. Rapid Diagnostek, Inc. ("" "RDI"), was in the business of developing new products for Heska's use in the veterinary medicine industry.

11. Heska and RDI, a non-party in this action, entered into a business relationship evidenced by two contracts, both dated April 21, 2011 ("Effective Date").

12. One of the contracts is entitled "Research, Development, and Distribution Agreement" ("RDDA"). The other contract is entitled "Manufacturing and Supply Agreement" ("MSA"). Heska and RDI are the only parties to both of the contracts.

13. The contracts were entered into simultaneously. Although drafted as separate agreements, the contracts are interrelated and together form the framework for a long-term business relationship between Heska and RDI.

14. Broadly described, the contracts required Heska to provide RDI with partial funding, reagents (biological substances necessary for testing of the product), and the scientific know-how and expertise of Heska's technical employees to develop an instrument ("Instrument Product") and related consumable products for performing immunoassay analysis of biomarkers and other substances, such as renal damage markers, infectious disease pathogens, and endocrine markers (*e.g.*, total T4, cortisol, canine TSH) for application specifically in the veterinary medical field.

15. At the inception of the project, and before creating any prototypes, Heska and RDI envisioned the Instrument Product would be small enough to be carried by veterinary professionals

to the animal patients at point of treatment, rather than requiring the animal patients to be transported into a veterinary clinic for diagnostic testing.

16. Both the RDDA and MSA refer to the Instrument Product as being "hand-held," but neither contract contains any physical dimensions of the instrument they intended to develop.

17. More specifically, the RDDA describes the Instrument Product as "a hand-held sized analyzer and associated hardware and software capable of performing, displaying and reporting a diagnostic test in an appropriate biological sample such as serum, plasma, whole blood, urine or saliva. The instrument will provide software to automatically calibrate the sensor/instrument electronics, and guide or prompt user operations from sensor mounting to reporting of the result. The Instrument Product will include ancillary or accessory products necessary for practical use in the laboratory or usage environment including: instruction manuals and a charging station."

18. In technical terms, Heska and RDI were jointly developing an Instrument Product that combines a fluidic cartridge based immune-assay system with enzyme precipitable substrate that increases mass on a sensor. The increase in mass on the sensor, in turn, produces a change in resonator frequency that is then measured. This Instrument Product was intended to be different from the industry-standard optical or fluorescence-based approach.

19. Under the contracts, Heska is responsible for funding development costs associated with RDI's research and development program in accordance with a Schedule of Milestones set forth in the RDDA.

20. Heska is also responsible for the development and supply of certain reagents necessary for RDI's development of the Instrument Product.

21. Through the MSA, Heska acquired the exclusive rights to purchase the instruments

and products from RDI at specified prices and quantities. Both Heska and RDI reasonably anticipated that the business venture would be advantageous and profitable for both companies. Through the exclusivity terms, Heska obtained the exclusive rights to market the Instrument Product, which rights have significant value when the Instrument Product is released to the market.

22. Both contracts contain a 10-year term commencing on the Effective Date.

**B. Evolution of Relationship Between Heska and RDI under the Agreements.**

23. Initially, both parties performed their respective obligations under the contracts.

24. Heska paid RDI $300,000.00 on April 26, 2011, the first payment called for in the Schedule of Milestones.

25. Although it was under no legal obligation to do so, Heska provided additional funding to RDI before the time when payments were due under the Schedule of Milestones.

26. Specifically, Heska paid four milestones payments in advance, totaling $200,000.00, in February, 2012, before RDI's actual completion of the milestones performances, in order to assist RDI to obtain bridge financing.

27. Early in the project, Heska and RDI realized that given all of the physical components necessary to be contained with the Instrument Product housing, (e.g., heater, pump, motor, battery, circuit boards, cartridge hardware, display screen), a hand-held size was not feasible.

28. As a result, Heska and RDI enlarged the size of the prototypes to still be portable, although not as small as originally envisioned.

29. During the five years that Heska and RDI worked together on this research and development project, RDI and Heska held monthly update meetings to discuss and assess various tasks accomplished, technical updates, milestones reached and projections for the continued

development of the Instrument Product.

30. PowerPoint presentations provided by RDI show that as of October 2013, Heska and RDI were jointly working on an instrument that was still easily portable, but no longer the size of a cell phone as originally planned.

31. The report provided by RDI in November 2013 shows the then-current prototype of Rev 5 had a base footprint size of 6.0 inches x 7.5 inches, and a sloping height ranging from 2.5 inches in the front to 4.7 inches at the back.

32. As part of Heska's performance under the RDDA, Heska continued to supply reagents to RDI for use in testing and developing the Instrument Product, which were necessary for TSH and T4 assays.

33. Throughout the remainder of 2013, and through the point in 2016 when RDI suddenly ceased working on the project, Heska and RDI were always working on developing an Instrument Product with essentially those same dimensions identified in paragraph 31 of this Complaint.

**C. Asset Purchase Agreement between RDI and Qorvo US dated September 1, 2016 ("Asset Purchase Agreement").**

34. Although it accepted $500,000.00 from Heska to fund its research and development program, RDI never completed the Milestones called for in the contracts and stopped work altogether on development of the Instrument Product.

35. Commencing in mid-2016, RDI started canceling the monthly development committee meetings and suddenly stopped work.

36. The last monthly development committee meeting occured in August 2016. RDI unilaterally canceled the meetings scheduled for September and October 2016.

37. Kevin Wilson, President of Heska, received an e-mail from Jack Ahrens from TGap

1022991v.1

Ventures, LLC on October 17, 2016, stating, among other things, he "is handling the wind down of Rapid Diagnostek" and that "The company [RDI] is in liquidation. . . ."

38. Before RDI stopped work, RDI had made progress on development of the Instrument Product, and developed technical knowledge, engineering specifications, market knowledge, and intellectual and practical knowhow on the Instrument Product it was developing with Heska's funding and technical assistance.

39. Heska also provided RDI with reagents, advice and access to its intellectual property, for which it is entitled to compensation and protection.

40. RDI used Heska reagents and related intellectual property or sold jointly owned intellectual property developed under the contracts to develop other products for other customers, to finish the development of the Instrument Product for some other company, or transferred these valuable assets to Qorvo.

41. On November 3, 2016, Glenn Frank at Heska received an e-mail from Bryan Bothwell ("Mr. Bothwell") at Qorvo, Inc. indicating "Qorvo has purchased physical assets and IP and hired the technical team which was in place at RDI." Mr. Bothwell's e-mail indicated that "RDI contracts were not included in the sale."

42. Heska was kept in the dark about what had happened to RDI, and the project on which it had worked with RDI to develop during the previous five years. Therefore Heska sought information from Qorvo to determine what happened to the RDI research and development project.

43. Qorvo claimed its Asset Purchase Agreement excluded any assets that RDI may have received from Heska, as well as any rights of RDI under the RDDA and MSA. An email from Qorvo's counsel to Heska's counsel dated April 9, 2018 states: "Qorvo did not acquire assets relating to the JDA [Joint Development Agreement] and Manufacture and Sale Agreement

between Heska and RDI."

44. Upon request, Qorvo's counsel provided a redacted copy of the Asset Purchase Agreement to Heska in April, 2018, under an "Attorneys' Eyes Only" designation.

45. Qorvo also asserted that the instrument it continued to develop after the RDI acquisition is not a hand-held size but rather a larger size. But for the size of the instrument, the new Qorvo instrument, described in further detail herein, appears to use the same technology and be functionally equivalent to the Instrument Product.

46. Qorvo agreed to allow Heska's technical employees to view the schedules from the Asset Purchase Agreement under terms assuring continued confidentiality on November 16, 2018. Their review of Schedules 1.2(b) and 1.2(c) of the Asset Purchase Agreement revealed that many items of tangible personal property and inventories acquired by Qorvo from RDI include items that Heska and RDI were working on together pursuant to the RDDA and MSA.

47. More specifically, Qorvo received the Rev 5 prototype of the Instrument Product, numerous Rev 6 components, as well as related parts and biological agents.

48. Qorvo also hired, and still employs, RDI's principal research and development scientist Ian Harmon who worked directly with Heska on this project for all five years.

49. Qorvo US transferred or assigned the assets and intellectual property it obtained from RDI to Qorvo Biotech.

50. Heska is entitled to protection of its exclusive rights to the Instrument Product and all engineering and development progress made on the Instrument Product to date for which it has paid and for which it has a reasonable expectation of benefit.

51. Heska is entitled to have its investment in and reasonable expectation of deriving exclusive benefit from the Instrument Product protected from diversion to third persons who would

build on the development work already performed to finish the Instrument Product and commercially exploit it without compensation to Heska.

**D. Court Order in Denver District Court, Colorado, Case No. 2017CV033478, titled *Heska Corporation v. Rapid Diagnostek* ("RDI Case").**

52. Heska initiated a lawsuit against RDI for breach of contract and injunctive relief in the RDI Case and obtained a judgment for money damages and injunctive relief.

53. The injunction enjoins "RDI, its successors and assigns, and anyone acting in concert with RDI… from selling, sharing, commercially exploiting, profiting from, or transferring to anyone other than Heska, the knowledge, information, engineering, technical knowhow, test results, prototypes, models, processes and methods developed by RDI through the [RDDA] with Heska's funding."

54. The injunction remains in effect through April 20, 2026 unless modified by future court order.

**E. Recent Press Releases and Involvement of Zomedica.**

55. Zomedica is a veterinary diagnostic and pharmaceutical company.

56. Qorvo, Inc. announced in a press release dated November 27, 2018 ("November 2018 Press Release") that Qorvo Biotech entered into a development and supply agreement with Zomedica to collaborate on the development of veterinary diagnostic assays with the goal to deliver reference-lab performance at the point of care.

57. According to the press release, under the agreement, Zomedica has exclusive, global rights to develop and market Qorvo Biotech's investigational point-of-care diagnostic platform for veterinary use.

58. The November 2018 Press Release explains that the diagnostic platform uses Qorvo Biotech's differentiated Bulk Acoustic Wave ("BAW") sensor, derived from the fundamental

BAW filter technology that is deployed in millions of mobile devices worldwide, to enable a non-optical and fluorescence-free detection system.

59. The BAW sensor described in the November 2018 Press Release relies on a resonator that changes frequency as a result of the test, which is the same kind of resonator developed for the Instrument Product—neither relies on the industry-standard optical or fluorescence-based approach.

60. A photograph of the diagnostic device TRUFORMA™ attached to a press release from Zomedica in May 21, 2019 ("May 2019 Press Release") reveals that its dimensions and shape are virtually identical to the most recent prototype Heska developed with RDI under the RDDA. *Compare* **Exhibit 1** (Slide from RDI's November 26, 2013 PowerPoint presentation) to **Exhibit 2** (May 2019 Press Release).

61. On August 13, 2019, Zomedica issued a press release ("August 2019 Press Release") indicating Zomedica intends to launch the TRUFORMA™ device, which uses the same technology in the same package with the same function as the Instrument Product.

62. On October 31, 2019, Zomedica issued a press release ("October 2019 Press Release") announcing the commencement of the final verification study of the first five assays designed for use with the TRUFORMA™ device.

## FIRST CLAIM FOR RELIEF
**(Misappropriation of Trade Secrets under DTSA Against Qorvo US, Qorvo Biotech, and Zomedica)**

63. Heska incorporates the allegations set forth above as if fully set forth herein.

64. Heska operates it business in interstate commerce across the United States.

65. As set forth above, contrary to RDI's agreements with Heska, Qorvo US, Qorvo Biotech, and Zomedica improperly obtained Heska's trade secrets and confidential information

1022991v.1

Case 1:19-cv-01108-LCB-JLW Document 1 Filed 11/01/19 Page 10 of 16

after Qorvo US's acquisition of RDI and/or conspired to use improper means to misappropriate Heska's trade secrets.

66. The trade secrets misappropriated by Qorvo US, Qorvo Biotech, and Zomedica included confidential and valuable technical knowledge, engineering specifications, market knowledge, and intellectual and practical knowhow relating to, developed for, and necessary for an instrument and related consumable products for performing immunoassay analysis of biomarkers and other substances, such as infections disease pathogens, bacteria, and parasites and test results, prototypes, models, processes and methods developed under the agreements with RDI.

67. The above-described information qualifies as "trade secrets" under the DTSA, as defined under 18 U.S.C. § 1839(3).

68. Heska took reasonable measures to keep such information secret by having RDI sign an agreement prohibiting the use and disclosure of such trade secrets and other such means.

69. Such information required substantial resources, time and investment by Heska to create and/or develop, and it derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means, another person who can obtain economic value from the disclosure or use of the information.

70. These trade secrets relate to a product used in, or intended for use in, interstate commerce across the United States.

71. Qorvo US, Qorvo Biotech, and Zomedica have used, are using, and will continue to use, Heska's trade secrets unless enjoined.

72. Qorvo US, Qorvo Biotech, and Zomedica's actions described herein constitute a willful and malicious misappropriation of Heska's trade secrets under 18 U.S.C. § 1836(b)(2).

73. Qorvo US, Qorvo Biotech, and Zomedica's misappropriation of Heska's trade

secrets is causing, and threatens to continue causing, Heska to suffer irreparable harm, including but not limited to loss of business advantage, loss of exclusivity rights, and loss of its investment in its trade secrets. This harm cannot be adequately remedied at law and requires preliminary and permanent injunctive relief.

74. Because Qorvo US, Qorvo Biotech, and Zomedica's DTSA violations have been willful and malicious Heska is entitled to exemplary damages of no more than twice the amount of damages for any actual loss and any unjust enrichment.

75. As such, Heska demands judgment against Qorvo US, Qorvo Biotech, and Zomedica for their violations of the DTSA in the form of compensatory and exemplary damages, preliminary and permanent injunctive relief, prejudgment interest, and such other and further relief as the Court deems just and proper.

## SECOND CLAIM FOR RELIEF
**(Misappropriation of Trade Secrets under North Carolina Trade Secrets Protection Act—Against Qorvo US, Qorvo Biotech, and Zomedica)**

76. Heska incorporates the allegations set forth above as if fully set forth herein.

77. The confidential and valuable technical knowledge, engineering specifications, market knowledge, and intellectual and practical knowhow relating to, developed for, and necessary for an instrument and related consumable products for performing immunoassay analysis of biomarkers and other substances, such as infectious disease pathogens, bacteria, and parasites and the test results, prototypes, models, processes and methods developed under the agreements with RDI constitute a trade secret.

78. Heska took reasonable measures to keep such information secret by having RDI sign an agreement prohibiting the use and disclosure of such trade secrets.

79. Such information required substantial resources, time and investment by Heska to

create and/or develop, and such information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means.

80. Qorvo US, Qorvo Biotech, and Zomedica acquired, disclosed, used and/or are disclosing or using, Heska's trade secrets and confidential information without Heska express or implied authority or consent.

81. Qorvo US, Qorvo Biotech, and Zomedica knew or should have known of Heska's trade secret.

82. Qorvo US, Qorvo Biotech, and Zomedica's misappropriation of Heska's trade secrets and confidential information is causing, and threatens to continue causing, Heska to suffer irreparable harm, including but not limited to loss of business advantage, loss of exclusivity rights, and loss of its investment in its trade secrets.

**THIRD CLAIM FOR RELIEF**
**(Misappropriation of Trade Secrets under Michigan Uniform Trade Secrets Act ("MUTSA")—Against Qorvo US, Qorvo Biotech, and Zomedica)**

83. Heska incorporates the allegations set forth above as if fully set forth herein.

84. The confidential and valuable technical knowledge, engineering specifications, market knowledge, and intellectual and practical knowhow relating to, developed for, and necessary for an instrument and related consumable products for performing immunoassay analysis of biomarkers and other substances, such as infectious disease pathogens, bacteria, and parasites and the test results, prototypes, models, processes and methods developed under the agreements with RDI constitute a trade secret as defined in the MUTSA.

85. Heska made disclosures of the above trade secrets and confidential information to RDI in confidence and took reasonable measures to keep such information secret by having RDI

sign an agreement prohibiting the use and disclosure of such trade secrets.

86. Qorvo US, Qorvo Biotech, and Zomedica acquired, disclosed and/or used the above trade secrets and confidential information of Heska without express or implied consent from Heska, when at the time of acquisition, disclosure, or use, Qorvo US, Qorvo Biotech, and Zomedica knew or had reason to know that the trade secrets were derived through improper means, acquired under circumstances giving rise to a duty to maintain their secrecy or limit their use, or derived from or through someone who owed a duty to Heska to maintain their secrecy or limit their use.

87. Qorvo US, Qorvo Biotech, and Zomedica's misappropriation of Heska's trade secrets and confidential information is causing, and threatens to continue causing, Heska to suffer irreparable harm, including but not limited to loss of business advantage, loss of exclusivity rights, and loss of its investment in its trade secrets.

## FOURTH CLAIM FOR RELIEF
### (Preliminary and Permanent Injunction—Against Qorvo US, Qorvo Biotech, and Zomedica)

88. Heska incorporates the allegations set forth above as if fully set forth herein.

89. Heska is entitled to protection of its rights to confidential and valuable technical knowledge, engineering specifications, market knowledge, and intellectual and practical knowhow relating to, developed for, and necessary for an instrument and related consumable products for performing immunoassay analysis of biomarkers and other substances, such as infectious disease pathogens, bacteria, including the Instrument Product, and all engineering and development progress made on the Instrument Product to date and its legitimate expectation to the exclusive right to make the Instrument Product when it is released to the market.

90. Qorvo Biotech and Zomedica plan to launch a pet diagnostic device,

TRUFORMA™, which uses the same technology in the same package with the same function as the Instrument Product.

91. Such plan would constitute further misappropriation of Heska's trade secrets.

92. An injunction is necessary to prevent Qorvo US, Qorvo Biotech and Zomedica from profiting from the misappropriation of Heska's trade secrets and to prevent Qorvo US, Qorvo Biotech, Zomedica, and all persons acting in concert with Qorvo US, Qorvo Biotech, and Zomedica, from selling, sharing, commercially exploiting, profiting from or transferring to anyone other than Heska, the knowledge, information, engineering, technical knowhow, test results, prototypes, models, processes and methods developed under the agreements with RDI.

93. If Qorvo US, Qorvo Biotech, and Zomedica are allowed to proceed, there is a likelihood of causing Heska to suffer irreparable harm, including but not limited to loss of business advantage, loss of exclusivity rights, and loss of its investment in its trade secrets.

85. Heska has no adequate remedy at law that would provide full, complete, and adequate relief for this injury, loss, or damage, as money damages would be difficult to ascertain, so preliminary and permanent injunctive relief is required.

## PRAYER FOR RELIEF

WHEREFORE, Heska requests an award of relief in this matter, including but not limited to:

a. An injunction preventing Qorvo US, Qorvo Biotech, and Zomedica from profiting from the misappropriation of Heska's trade secrets and to prevent Qorvo US, Qorvo Biotech, Zomedica, and all persons acting in concert with Qorvo US, Qorvo Biotech, and Zomedica, from selling, sharing, commercially exploiting, profiting from or transferring to anyone other than Heska, the knowledge, information, engineering, technical knowhow, test results, prototypes, models, processes and methods developed under the agreements with RDI.

1022991v.1

    b.       Costs and expenses of suit;

    c.       Pre- and post-judgment interest as provided by law; and

    d.       Such other relief as this Court deems just and proper.

Respectfully submitted, this the 1st day of November, 2019.

                                      JOHNSTON, ALLISON & HORD, P.A.

                                      /s/ Martin L. White
                                      Martin L. White, NC State Bar No. 23330
                                      mwhite@jahlaw.com
                                      Kathleen D.B. Burchette, NC State Bar No. 45891
                                      kburchette@jahlaw.com
                                      1065 East Morehead Street
                                      Charlotte, NC 28204
                                      Telephone No.: (704) 332-1181
                                      Facsimile No.:  (704) 323-4715

1022991v.1