IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

Civil Action No. 1:19-cv-01108

| | |
|---|---|
| HESKA CORPORATION, a Delaware Corporation, <br><br> Plaintiffs, <br><br> v. <br><br> QORVO US, INC., a Delaware Corporation; QORVO BIOTECHNOLOGIES, LLC, a Delaware Limited Liability Company, and ZOMEDICA PHARMACEUTICALS INC., D/B/A/ ZOMEDICA PHARMACEUTICALS CORP., a Delaware Corporation, <br><br> Defendants. | **AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** |

Plaintiff Heska Corporation ("Heska"), through its counsel, for its Complaint against Defendants Qorvo US, Inc. ("Qorvo US"), Qorvo Biotechnologies, LLC ("Qorvo Biotech"), and Zomedica Pharmaceuticals Inc. d/b/a Zomedica Pharmaceuticals Corp. ("Zomedica"), hereby states and alleges as follows:

**NATURE OF THE ACTION**

This is an action for damages and injunctive relief premised on Heska's claims against Qorvo US, Qorvo Biotech, and Zomedica.

**PARTIES**

1.      Plaintiff Heska Corporation is a Delaware corporation with its principal place of business located at 3760 Rocky Mountain Avenue, Loveland, CO 80538.

2.      Defendant Qorvo US, Inc. is a Delaware corporation with its principal place of business located at 7628 Thorndike Road, Greensboro, NC 27409-9421.  Qorvo US, Inc. is the manager of Qorvo Biotechnologies, LLC.

3.      Defendant Qorvo Biotechnologies, LLC is a Delaware limited liability company with its principal place of business located at 14505 21st Ave. N., Suite 212, Plymouth, MN 55447.  The principal executive office of Qorvo Biotechnologies, LLC is located at 7628 Thorndike Road, Greensboro, NC 27409.  Qorvo Biotechnologies, LLC is managed by Qorvo US and is a wholly-owned subsidiary of Qorvo, Inc., a non-party to this action with a principal place of business located at 7628 Thorndike Road, Greensboro, NC 27409 that is focused on bringing its Bulk Acoustic Wave (BAW) sensor to the veterinary health sector.

4.      Defendant Zomedica Pharmaceuticals Inc. is Delaware corporation with its principal place of business located at 100 Phoenix Drive, Ann Arbor, MI 48108.

## JURISDICTION AND VENUE

5.      This Court has federal subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Heska asserts a federal claim under the Defend Trade Secrets Act of 2016, codified at 18 U.S.C. § 1831, *et seq.* (the "DTSA").  The Court has supplemental jurisdiction over Heska's remaining claims pursuant to 28 U.S.C. § 1367 because those claims form part of the same case or controversy as the federal question claim.

6.      This Court has personal jurisdiction over Qorvo US under principles of specific and general jurisdiction, as Qorvo US is headquartered in the State of North Carolina.

7.      This Court has personal jurisdiction over Zomedica and Qorvo Biotech under principles of specific jurisdiction because each conducted business in the State of North

Carolina, some of which is the subject of this action, and each has sufficient minimum contacts with the State of North Carolina such that exercise of jurisdiction over Zomedica and Qorvo Biotech does not offend traditional notions of fair play and substantial justice. More specifically, Qorvo Biotech's principal executive office is located at 7628 Thorndike Road, Greensboro, NC 27409. *See* **Exhibit 1** (Business record details for Qorvo Biotech from the Minnesota Secretary of State Website). Furthermore, Zomedica entered into an exclusive agreement with Qorvo Biotech, as detailed below, and incorporates the BAW technology from Qorvo, Inc. located in Greensboro, North Carolina into its TRUFORMA™ device.

8. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(1).

## GENERAL ALLEGATIONS

**A. Agreements between Heska and RDI.**

9. Heska is in the business of manufacturing and selling supplies and equipment in the veterinary medicine industry.

10. Rapid Diagnostek, Inc. (""RDI"), a non-party to this action, was in the business of developing new products for Heska's use in the veterinary medicine industry.

11. Heska and RDI entered into a business relationship evidenced by two contracts, both dated April 21, 2011.

12. One of the contracts is entitled "Research, Development, and Distribution Agreement" ("RDDA"). The other contract is entitled "Manufacturing and Supply Agreement" ("MSA"). Heska and RDI are the only parties to both of the contracts.

13. The contracts were entered into simultaneously. Although drafted as separate agreements, the contracts are interrelated and together form the framework for a long-term

business relationship between Heska and RDI.

14.     Broadly described, the contracts required Heska to provide RDI with partial funding, reagents (biological substances necessary for testing of the product), and the scientific know-how and expertise of Heska's technical employees to develop an instrument ("Instrument Product") and related consumable products for performing immunoassay analysis (but not molecular diagnostics) of biomarkers and other substances, such as, but not limited to, renal damage markers, infectious disease pathogens, and endocrine markers (*e.g.*, total T4, cortisol, canine TSH) for application specifically in the veterinary medical field.

15.     At the inception of the project, and before creating any prototypes, Heska and RDI envisioned the Instrument Product would be small enough to be carried by veterinary professionals to the animal patients at point of treatment, rather than requiring the animal patients to be transported into a veterinary clinic for diagnostic testing.

16.     Both the RDDA and MSA refer to the Instrument Product as being "hand-held," but neither contract contains any physical dimensions of the instrument they intended to develop.

17.     More specifically, the RDDA and MSA describe the Instrument Product as

> a hand-held sized analyzer and associated hardware and software capable of performing, displaying and reporting a diagnostic test in an appropriate biological sample such as serum, plasma, whole blood, urine, or saliva. The instrument will provide software to automatically calibrate the sensor/instrument electronics, and guide or prompt user operation from sensor mounting to reporting of the result.  The Instrument Product will include ancillary or accessory products necessary for practical use in the laboratory or usage environment including: instruction manuals and a charging station.

18.     In technical terms, Heska and RDI were jointly developing an Instrument Product that combines a fluidic cartridge based immune-assay system with enzyme precipitable substrate

that increases mass on a sensor. The increase in mass on the sensor, in turn, produces a change in resonator frequency that is then measured. This Instrument Product was intended to be different from the industry-standard optical or fluorescence-based approach.

19.     Under the contracts, Heska is responsible for funding development costs associated with RDI's research and development program in accordance with a Schedule of Milestones set forth in the RDDA.

20.     Heska is also responsible for the development and supply of certain reagents necessary for RDI's development of the Instrument Product.

21.     Through the MSA, Heska acquired the exclusive rights to purchase the Instrument Product and related products from RDI at specified prices and quantities. Both Heska and RDI reasonably anticipated that the business venture would be advantageous and profitable for both companies. Through the exclusivity terms, Heska obtained the exclusive rights to market the Instrument Product, which rights have significant value when the Instrument Product is released to the market.

22.     Both contracts contain a 10-year term commencing on April 21, 2011.

**B.  Evolution of Relationship between Heska and RDI under the Agreements.**

23.     Initially, both parties performed their respective obligations under the contracts.

24.     Heska paid RDI $300,000.00 on April 26, 2011, the first payment called for in the Schedule of Milestones.

25.     Although it was under no legal obligation to do so, Heska provided additional funding to RDI before the time when payments were due under the Schedule of Milestones.

26.     Specifically, Heska paid four milestone payments in advance, totaling

$200,000.00, in February, 2012, before RDI's actual completion of the milestones performances, in order to assist RDI to obtain bridge financing.

27.     Heska provided technical guidance, know-how, and knowledge based in part on technical experts.

28.     Heska also provided RDI with reagents, advice, and access to its intellectual property.

29.     During the five years that Heska and RDI worked together on this research and development project, RDI and Heska held monthly update meetings to discuss and assess various tasks accomplished, technical updates, milestones reached and projections for the continued development of the Instrument Product.

30.     Early in the project, Heska and RDI realized that given all of the physical components necessary to be contained within the Instrument Product housing, (*e.g*., heater, pump, motor, battery, circuit boards, cartridge hardware, display screen), the size of the Instrument Product needed to change.

31.     As a result, Heska and RDI enlarged the size of the prototypes to still be portable, although not as small as originally envisioned.

32.     PowerPoint presentations provided by RDI show that as of October 2013, Heska and RDI were jointly working on an instrument that was still easily portable, but no longer the size of a cell phone as originally planned.

33.     The report provided by RDI in November 2013 shows the then-current prototype of Rev 5 had a base footprint size of 6.0 inches x 7.5 inches, and a sloping height ranging from 2.5 inches in the front to 4.7 inches at the back.

1026824v.1
09343
9001

34.     Throughout the remainder of 2013, and through the point in 2016 when RDI suddenly ceased working on the project, Heska and RDI were always working on developing an Instrument Product with essentially those same dimensions identified in Paragraph 33.

**C.  Asset Purchase Agreement between RDI and Qorvo US dated September 1, 2016 ("Asset Purchase Agreement").**

35.     Although it accepted $500,000.00 from Heska to fund its research and development program, RDI never completed the milestones called for in the contracts and stopped work altogether on development of the Instrument Product.

36.     Commencing in mid-2016, RDI started canceling the monthly development committee meetings and suddenly stopped work.

37.     The last monthly development committee meeting occurred in August 2016.  RDI unilaterally canceled the meetings scheduled for September and October 2016.

38.     Kevin Wilson, President of Heska, received an e-mail from Jack Ahrens from TGap Ventures, LLC on October 17, 2016, stating, among other things, he is "handling the wind down of Rapid Diagnostek…" and that "The company [RDI] is in liquidation..."

39.     Before RDI stopped work, RDI had made progress on development of the Instrument Product, and developed technical knowledge, engineering specifications, prototypes, market knowledge, and intellectual and practical knowhow on the Instrument Product it was developing with Heska's funding and technical assistance.

40.     On November 3, 2016, Glenn Frank at Heska received an e-mail from Bryan Bothwell ("Mr. Bothwell") at Qorvo, Inc. indicating "Qorvo has purchased physical assets and IP and hired the technical team which was in place at RDI."  Mr. Bothwell's e-mail indicated that "RDI contracts were not included in the sale."

1026824v.1
09343
9001

41.     Heska was kept in the dark about what had happened to RDI, the project on which it had worked with RDI to develop during the previous five years, and the partially completed Instrument Product.  Therefore, Heska made reasonable inquiry of and sought information directly from Qorvo US to determine what was transferred to Qorvo US and what happened to the Heska/RDI research and development project.

42.     Qorvo US claimed its Asset Purchase Agreement excluded any assets that RDI may have received from Heska, as well as any rights of RDI under the RDDA and MSA.  An email from Qorvo US's counsel to Heska's counsel dated April 9, 2018 states: "[Qorvo] did not acquire assets relating to the JDA [Joint Development Agreement] and Manufacture & Sale Agreement between Heska and RDI, and that Qorvo received from RDI express representations regarding same."

43.     In the context of its lawsuit against RDI, described in Section D, below, Heska made several good-faith efforts for post-judgment discovery of Qorvo US to determine more details about the Asset Purchase Agreement and to determine whether Qorvo US took the partially completed Heska/RDI research and development project and knowledge and continued to work on the project's completion.

44.     Qorvo US resisted all of Heska's efforts at the discovery, claiming the Asset Purchase Agreement specifically excluded the contracts between Heska and RDI, which was true on the face of the document, but misleading.  Qorvo US also grounded its resistance to Heska's discovery efforts by seizing on and isolating the word "hand-held" in the RDDA and MSA and denying that it was working on any hand-held instruments for performing immunoassay analysis of biomarkers and other substances.

45.     Upon request, Qorvo US's counsel provided a redacted copy of the Asset Purchase Agreement to Heska in April, 2018, under an "Attorneys' Eyes Only" designation.

46.     Qorvo US also asserted that the instrument it continued to develop after the RDI acquisition is not hand-held, but rather a larger size.

47.     The new instrument being called the TRUFORMA™, described in further detail herein, appears from press releases to use the same technology and be functionally equivalent to the Instrument Product and to be of similar size to a later prototype of the Instrument Product. Because Qorvo US has resisted all of Heska's efforts at reasonable inquiry to date, this is an allegation that will likely have additional evidentiary support after the reasonable opportunity for further investigation or discovery.

48.     Qorvo US agreed to allow Heska's technical employees to view the schedules from the Asset Purchase Agreement under terms assuring continued confidentiality on November 16, 2018.

49.     Heska's technical employees' review of Schedules 1.2(b) and 1.2(c) of the Asset Purchase Agreement revealed that many items of tangible personal property and inventories acquired by Qorvo US from RDI include items that Heska and RDI were working on together pursuant to the RDDA and MSA.

50.     More specifically, Qorvo US received the Rev 5 prototype of the Instrument Product, numerous Rev 6 components, as well as related parts and biological agents.

51.     Qorvo, Inc., a non-party to this suit of which Qorvo Biotech is a wholly-owned subsidiary, also hired and still employs, RDI's principal research and development scientist, Ian Harmon, with whom Heska's technical employees worked directly on this project for all five

1026824v.1
09343
9001

years.

52.     Upon information and belief, Qorvo US transferred or assigned the tangible assets and intellectual property it obtained from RDI to Qorvo Biotech, who in turn transferred or assigned it to Zomedica.  Because Qorvo US resisted all of Heska's efforts at reasonable inquiry to date, this is an allegation that will likely have specific evidentiary support after the reasonable opportunity for further investigation or discovery.

53.     Heska is entitled to protection of its exclusive rights to the Instrument Product and all engineering and development progress made on the Instrument Product to date for which it has paid and for which it has a reasonable expectation of benefit.

54.     Heska is entitled to have its investment in and reasonable expectation of deriving exclusive benefit from the Instrument Product protected from diversion to third persons who would build on the development work already performed to finish the Instrument Product and commercially exploit it without compensation to Heska.

**D.  Court Order in Denver District Court, Colorado, Case No. 2017CV033478, titled *Heska Corporation v. Rapid Diagnostek* ("RDI Case").**

55.     Heska initiated a lawsuit against RDI for breach of contract and injunctive relief in the RDI Case and obtained a judgment for money damages and injunctive relief ("Colorado Court Order").

56.     The injunction enjoins "RDI, its successors and assigns, and anyone acting in concert with RDI… from selling, sharing, commercially exploiting, profiting from or transferring to anyone other than Heska, the knowledge, information, engineering, technical knowhow, test results, prototypes, models, processes and methods developed by RDI through the [RDDA] with Heska's funding."

57.     The injunction remains in effect through April 20, 2026 unless modified by future

court order.

**E.  Recent Press Releases and Involvement of Zomedica.**

58.     Zomedica is a veterinary diagnostic and pharmaceutical company.

59.     Qorvo, Inc. announced in a press release dated November 27, 2018

("November 2018 Press Release") that Qorvo Biotech entered into a development and supply

agreement with Zomedica to collaborate on the development of veterinary diagnostic assays with

the goal to deliver reference-lab performance at the point of care.  *See* **Exhibit 2** (Copy of

November 2018 Press Release).

60.     As described in the November 2018 Press Release, Zomedica "agreed to pay

Qorvo U.S.$1.0 million in cash…" and "to issue to Qorvo unregistered common shares having a

value of U.S.$3.9 million…"

61.     According to the November 2018 Press Release, under the agreement between

Qorvo Biotech and Zomedica, Zomedica has exclusive, global rights to develop and market

Qorvo Biotech's investigational point-of-care diagnostic platform for veterinary use.

62.     The November 2018 Press Release states that under the agreement, Zomedica will

be solely responsible for the validation, marketing and sale of the assays, instruments and related

assay cartridges, while "Qorvo will be responsible for the development and verification of the

assays, instruments and cartridges, and all related development costs other than certain non-

recurring engineering expenses which will be paid by Zomedica" and that "Qorvo will supply the

instruments and the related assay cartridges to Zomedica."

63.     The November 2018 Press Release explains that the diagnostic platform uses

1026824v.1
09343
9001

Qorvo, Inc.'s differentiated BAW sensor, derived from the fundamental BAW filter technology that is deployed in millions of mobile devices worldwide, to enable a non-optical and fluorescence-free detection system.

64.     The BAW sensor described in the November 2018 Press Release relies on a resonator that changes frequency as a result of the test, which is the same kind of resonator developed for the Instrument Product—neither relies on the industry-standard optical or fluorescence-based approach.

65.     A photograph of the diagnostic device TRUFORMA™ attached to a press release from Zomedica on May 21, 2019 ("May 2019 Press Release") reveals that its dimensions and shape are virtually identical to the most recent prototype Heska developed with RDI under the RDDA.  *Compare* **Exhibit 3** (Slide from RDI's November 26, 2013 PowerPoint presentation) to **Exhibit 4** (Image of TRUFORMA™ on first page of May 2019 Press Release).

66.     On August 7, 2019, Zomedica issued a press release ("August 2019 Press Release") indicating Zomedica intends to commence marketing the TRUFORMA™ device in the first quarter of 2020.  *See* **Exhibit 5** (Copy of August 2019 Press Release).

67.     Heska put Zomedica on notice of the Colorado Court Order and demanded compliance with such court order via a demand letter dated August 23, 2019.

68.     Zomedica disregarded Heska's demands and indicated it was moving forward as evidenced by the press release issued by Zomedica on October 31, 2019 ("October 2019 Press Release") announcing the commencement of the final verification study of the first five assays designed for use with the TRUFORMA™ device.  *See* **Exhibit 6** (Copy of October 2019 Press Release).

1026824v.1
09343
9001

## FIRST CLAIM FOR RELIEF
### (Misappropriation of Trade Secrets under DTSA against Qorvo US, Qorvo Biotech, and Zomedica)

69.     Heska incorporates the allegations set forth above as if fully set forth herein.

70.     Heska operates it business in interstate commerce across the United States.

71.     As set forth above, the Asset Purchase Agreement and press releases demonstrate Qorvo US, Qorvo Biotech, and Zomedica improperly obtained Heska's trade secrets and confidential information after Qorvo US's acquisition of RDI and/or conspired to use improper means to misappropriate Heska's trade secrets where RDI had non-disclosure requirements of such information pursuant to the RDDA and MSA with Heska.  Qorvo US's untrue statement that it "did not acquire assets" related to the Heska/RDI joint development project further evidences the wrongful nature of defendants' conduct.

72.     Qorvo US, Qorvo Biotech, and Zomedica improperly profited from RDI's breach of its contracts with Heska and acquired information and assets RDI did not have authority to transfer despite Qorvo US having done due diligence prior to its asset purchase and being aware of the terms of RDI's contracts with Heska.

73.     The trade secrets misappropriated by Qorvo US, Qorvo Biotech, and Zomedica included confidential and valuable technical knowledge, engineering specifications, market knowledge, and intellectual and practical knowhow relating to, developed for, and necessary for an instrument and related consumable products for performing immunoassay analysis of biomarkers and other substances, such as infectious disease pathogens, bacteria, and parasites and test results, prototypes, models, processes and methods developed under the contracts with RDI.

74.     The above-described information qualifies as "trade secrets" under the DTSA, as defined under 18 U.S.C. § 1839(3).

75.     Heska took reasonable measures to keep such information secret by having RDI sign the RDDA and MSA prohibiting the use and disclosure of such trade secrets and other such information.

76.     Such information required substantial resources, time and investment by Heska to create and/or develop, and it derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means, another person who can obtain economic value from the disclosure or use of the information.

77.     These trade secrets relate to a product used in, or intended for use in, interstate commerce because Heska was granted an exclusive distribution right under the RDDA that extended worldwide.

78.     The Asset Purchase Agreement and press releases demonstrate Qorvo US, Qorvo Biotech, and Zomedica have used, are using, and/or will continue to use, Heska's trade secrets unless enjoined.

79.     Qorvo US's actions described herein constitute a willful and malicious misappropriation of Heska's trade secrets under 18 U.S.C. § 1836(b)(2).

80.     Qorvo US, Qorvo Biotech, and Zomedica's misappropriation of Heska's trade secrets is causing, and threatens to continue causing, Heska to suffer irreparable harm, including but not limited to loss of business advantage, loss of exclusivity rights, and loss of its investment in its trade secrets.  This harm cannot be adequately remedied at law and requires preliminary and permanent injunctive relief.

81.     Because Qorvo US thwarted discovery efforts from Heska and made attempts to conceal and/or mischaracterize information and their actions, their DTSA violations have been willful and malicious, entitling Heska to exemplary damages of no more than twice the amount of damages for any actual loss and any unjust enrichment.

82.     As such, Heska demands judgment against Qorvo US, Qorvo Biotech, and Zomedica for their violations of the DTSA in the form of compensatory and exemplary damages, preliminary and permanent injunctive relief, prejudgment interest, and such other and further relief as the Court deems just and proper.

## SECOND CLAIM FOR RELIEF
### (Misappropriation of Trade Secrets under North Carolina Trade Secrets Protection Act, N.C. Gen. Stat. § 66-152 *et seq.*—Against Qorvo US, Qorvo Biotech, and Zomedica)

83.     Heska incorporates the allegations set forth above as if fully set forth herein.

84.     The confidential and valuable technical knowledge, engineering specifications, market knowledge, and intellectual and practical knowhow relating to, developed for, and necessary for an instrument and related consumable products for performing immunoassay analysis of biomarkers and other substances, such as infectious disease pathogens, bacteria, and parasites and the test results, prototypes, models, processes and methods developed under the contracts with RDI constitute a trade secret as defined under N.C. Gen. Stat. § 66-152(3).

85.     Heska took reasonable measures to keep such information secret by having RDI sign the RDDA and MSA prohibiting the use and disclosure of such trade secrets.

86.     Such information required substantial resources, time and investment by Heska to create and/or develop, and such information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper

means.

87.     Qorvo US, Qorvo Biotech, and Zomedica acquired, disclosed, used and/or are disclosing or using, Heska's trade secrets and confidential information without Heska's express or implied authority or consent.

88.     Qorvo US, Qorvo Biotech, and Zomedica did not obtain such trade secret from another person or entity with a right to disclose the trade secret because RDI did not have such right.

89.     Qorvo US, Qorvo Biotech, and Zomedica knew or should have known of Heska's trade secret.  Qorvo US in particular conducted due diligence prior to its RDI asset purchase and in the course of that due diligence it reviewed and kept copies of the RDDA and MSA.

90.     Qorvo US, Qorvo Biotech, and Zomedica's misappropriation of Heska's trade secrets and confidential information is causing, and threatens to continue causing, Heska to suffer irreparable harm, including but not limited to loss of business advantage, loss of exclusivity rights, and loss of its investment in its trade secrets.

<u>**THIRD CLAIM FOR RELIEF**</u>
**(Misappropriation of Trade Secrets under Michigan Uniform Trade Secrets Act, MCLS § 445.1901 et seq.—Against Qorvo Biotech and Zomedica)**

91.     Heska incorporates the allegations set forth above as if fully set forth herein.

92.     The confidential and valuable technical knowledge, engineering specifications, market knowledge, and intellectual and practical knowhow relating to, developed for, and necessary for an instrument and related consumable products for performing immunoassay analysis of biomarkers and other substances, such as infectious disease pathogens, bacteria, and parasites and the test results, prototypes, models, processes and methods developed under the

1026824v.1
09343
9001

contracts with RDI constitute a trade secret as defined under MCLS § 445.1902(d).

93. Heska made disclosures of the above trade secrets and confidential information to RDI in confidence and took reasonable measures to keep such information secret by having RDI sign the RDDA and MSA prohibiting the use and disclosure of such trade secrets.

94. Qorvo Biotech and Zomedica acquired, disclosed and/or used the above trade secrets and confidential information of Heska without express or implied consent from Heska, when at the time of acquisition, disclosure, or use, Qorvo Biotech and Zomedica knew or had reason to know that the trade secrets were derived through improper means, acquired under circumstances giving rise to a duty to maintain their secrecy or limit their use, or derived from or through someone who owed a duty to Heska to maintain their secrecy or limit their use.

95. Qorvo US, Qorvo Biotech, and Zomedica improperly profited from RDI's breach of its contracts with Heska and acquired information RDI did not have authority to transfer despite Qorvo US having done due diligence and being aware of the terms of RDI's contracts with Heska.

96. Qorvo Biotech and Zomedica's misappropriation of Heska's trade secrets and confidential information is causing, and threatens to continue causing, Heska to suffer irreparable harm, including but not limited to loss of business advantage, loss of exclusivity rights, and loss of its investment in its trade secrets.

## FOURTH CLAIM FOR RELIEF
### Misappropriation of Trade Secrets under Minnesota Uniform Trade Secrets Act, Minn. Stat. § 325C.01 et seq.—Against Qorvo US and Qorvo Biotech)

97. Heska incorporates the allegations set forth above as if fully set forth herein.

98. The confidential and valuable technical knowledge, engineering specifications,

market knowledge, and intellectual and practical knowhow relating to, developed for, and necessary for an instrument and related consumable products for performing immunoassay analysis of biomarkers and other substances, such as infectious disease pathogens, bacteria, and parasites and the test results, prototypes, models, processes and methods developed under the contracts with RDI constitute a trade secret as defined under Minn. Stat. § 325C.01(5).

99. Heska made reasonable efforts under the circumstances to maintain the secrecy of the above trade secrets by having RDI sign the RDDA and MSA prohibiting the use and disclosure of such trade secrets.

100. Such information required substantial resources, time and investment by Heska to create and/or develop, and the above trade secrets derive independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means, by other persons who can obtain economic value from their disclosure or use.

101. Qorvo US and Qorvo Biotech acquired, disclosed and/or used the above trade secrets and confidential information of Heska without express or implied consent from Heska, when at the time of acquisition, disclosure, or use, Qorvo US and Qorvo Biotech knew or had reason to know that the trade secrets were derived through improper means, acquired under circumstances giving rise to a duty to maintain their secrecy or limit their use, or derived from or through someone who owed a duty to Heska to maintain their secrecy or limit their use.

102. Qorvo US, Qorvo Biotech, and Zomedica improperly profited from RDI's breach of its contracts with Heska and acquired information RDI did not have authority to transfer despite Qorvo US having done due diligence and being aware of the terms of RDI's contracts with Heska.

103.     Qorvo US and Qorvo Biotech's misappropriation of Heska's trade secrets and confidential information is causing, and threatens to continue causing, Heska to suffer irreparable harm, including but not limited to loss of business advantage, loss of exclusivity rights, and loss of its investment in its trade secrets.

## FIFTH CLAIM FOR RELIEF
### (Preliminary and Permanent Injunction—Against Qorvo US, Qorvo Biotech, and Zomedica)

104.     Heska incorporates the allegations set forth above as if fully set forth herein.

105.     Heska is entitled to protection of its rights to confidential and valuable technical knowledge, engineering specifications, market knowledge, and intellectual and practical knowhow relating to, developed for, and necessary for an instrument and related consumable products for performing immunoassay analysis of biomarkers and other substances, such as infectious disease pathogens, bacteria, including the Instrument Product, and all engineering and development progress made on the Instrument Product to date and its legitimate expectation to the exclusive right to market the Instrument Product when it is released to the market.

106.     Qorvo Biotech and Zomedica plan to launch a pet diagnostic device, TRUFORMA™, which based on the press releases, especially the November 2018 Press Release and May 2019 Press Release, and the slide from RDI's November 26, 2013 PowerPoint presentation, uses the same technology in the same package with the same function as the Instrument Product.

107.     Such plan would constitute further misappropriation of Heska's trade secrets.

108.     An injunction is necessary to prevent Qorvo US, Qorvo Biotech and Zomedica from profiting from the misappropriation of Heska's trade secrets and to prevent Qorvo US,

Qorvo Biotech, Zomedica, and all persons acting in concert with Qorvo US, Qorvo Biotech, and Zomedica, from selling, sharing, commercially exploiting, profiting from or transferring to anyone other than Heska, the knowledge, information, engineering, technical knowhow, test results, prototypes, models, processes and methods developed under the contracts with RDI.

109.    If Qorvo US, Qorvo Biotech, and Zomedica are allowed to proceed, there is a likelihood of causing Heska to suffer irreparable harm, including but not limited to loss of business advantage, loss of exclusivity rights, and loss of its investment in its trade secrets.

85.    Heska has no adequate remedy at law that would provide full, complete, and adequate relief for this injury, loss, or damage, as money damages would be difficult to ascertain, so preliminary and permanent injunctive relief is required.

## PRAYER FOR RELIEF

WHEREFORE, Heska requests an award of relief in this matter, including but not limited to:

a.    An injunction preventing Qorvo US, Qorvo Biotech, and Zomedica from profiting from the misappropriation of Heska's trade secrets, preventing Qorvo US, Qorvo Biotech, Zomedica, and all persons acting in concert with Qorvo US, Qorvo Biotech, and Zomedica, from selling, sharing, commercially exploiting, profiting from or transferring to anyone other than Heska, the knowledge, information, engineering, technical knowhow, test results, prototypes, models, processes and methods developed under the contracts with RDI, or requiring affirmative actions to be taken by Qorvo US, Qorvo Biotech, and Zomedica to be taken to protect the trade secrets and conditioning future use of the trade secret upon a payment of a

reasonable royalty where applicable under 18 USCS 1836(b)(3)(A)(iii), N.C. Gen. Stat. § 66-154(a)(1), MCLS § 445.1903, and Minn. Stat. § 325C.02(b);

b.    Damages for actual loss and for any unjust enrichment that is not addressed in computing damages for actual loss as allowed under 18 USCS §1836(b)(3)(B), N.C. Gen Stat. § 66-154(b), MCLS § 445.1904, and Minn. Stat. § 325C.03(a);

c.    Exemplary damages against Qorvo US as allowed under 18 USCS § 1836(b)(3)(C), N.C. Gen. Stat. §66-154(c), and Minn. Stat. § 325C.03(b);

d.    Any other relief provided under 18 USCS § 1836, N.C. Gen. Stat. § 66-152 et seq., MCLS § 445.1901 et seq., and Minn. Stat. § 325C.01 et seq.;

e.    Costs and expenses of suit, including attorney's fees, as allowed by law;

f.    Pre- and post-judgment interest as provided by law; and

g.    Such other relief as this Court deems just and proper.

Respectfully submitted, this the 22nd day of November, 2019.

JOHNSTON, ALLISON & HORD, P.A.

/s/ Martin L. White
Martin L. White, NC State Bar No. 23330
mwhite@jahlaw.com
Kathleen D.B. Burchette, NC State Bar No. 45891
kburchette@jahlaw.com
1065 East Morehead Street
Charlotte, NC 28204
Telephone No.: (704) 332-1181
Facsimile No.: (704) 323-4715
*Attorneys for Plaintiff*

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that the **AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** was electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following parties/persons that are registered for service electronically as follows:

John Morrow
Womble Bond Dickinson (US) LLP
One West 4th Street,
Winston-Salem, NC, 27101
john.morrow@wbd-us.com

Respectfully submitted this the 22nd day of November, 2019.

JOHNSTON, ALLISON & HORD, P.A.

/s/ Martin L. White_____
Martin L. White, NC State Bar No. 23330
*Attorney for Plaintiff*

1026824v.1
09343
9001