IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| HESKA CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:19CV1108 |
| | ) | |
| QORVO US, INC., | ) | |
| | ) | |
| QORVO BIOTECHNOLOGIES, LLC, | ) | |
| | ) | |
| and, | ) | |
| | ) | |
| ZOMEDICA PHARMACEUTICALS INC., | ) | |
| *doing business as* | ) | |
| *ZOMEDICA PHARMACEUTICALS CORP.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

LORETTA C. BIGGS, District Judge.

Plaintiff, Heska Corporation ("Heska"), initiated this action on November 1, 2019, against

Defendants, Qorvo US, Inc. ("Qorvo US"), Qorvo Biotechnologies, LLC ("Qorvo Biotech"),[1]

and Zomedica Pharmaceuticals Inc. ("Zomedica"), alleging misappropriation of trade secrets

under both federal and state statutes. (ECF No. 1.) Before the Court are Defendants' Motion

to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, (ECF No. 11),

and Plaintiff's Motion to Disregard or Strike, (ECF No. 18). For the reasons stated below,

Defendants' motion will be denied, and Plaintiff's motion will be granted.

---

[1] Throughout this Memorandum Opinion and Order, Qorvo US and Qorvo Biotech are collectively referenced as "Qorvo."

## I.    BACKGROUND

On November 22, 2019, Plaintiff filed an Amended Complaint that now serves as the operative complaint in this action and from which much of the background is derived. (ECF No. 8.) Plaintiff is a Delaware corporation with its principal place of business in Colorado and is in the business of selling supplies and equipment used in the veterinary medicine industry. (*Id.* ¶¶ 1, 9.) In 2011, Plaintiff entered into a business relationship with Rapid Diagnostek, Incorporated ("RDI")[2] in an effort to develop an instrument ("Instrument Product") that would allow veterinary professionals to perform diagnostic testing "at point of treatment, rather than requiring the animal patients to be transported into a veterinary clinic." (*Id.* ¶¶ 11, 14–15.) Heska and RDI executed two ten-year contracts memorializing their business relationship—the Research, Development, and Distribution Agreement ("RDDA") and the Manufacturing and Supply Agreement ("MSA") (collectively "the Agreements"). (*Id.* ¶¶ 11–12, 22.)

Though the Agreements have not been made a part of the record, according to the Amended Complaint the terms provide that Heska was responsible "for funding development costs associated with RDI's research and development program in accordance with a Schedule of Milestones set forth in the RDDA" and for "the development and supply of certain reagents necessary for RDI's development of the Instrument Product." (*Id.* ¶¶ 19–20.) Further, the MSA provides Heska with the exclusive right to purchase the Instrument Product from RDI at specified prices and quantities and the exclusive right to market it. (*Id.* ¶ 21.) The

---

[2] RDI is not a party to this lawsuit.

Agreements also contained provisions "prohibiting the use and disclosure" of information associated with the development of the Instrument Product. (*Id.* ¶¶ 75, 85, 93, 99.)

The Amended Complaint alleges that, up until about mid-2016, Plaintiff and RDI carried out their respective obligations under the Agreements and would regularly meet to discuss the development of the Instrument Product. (*Id.* ¶¶ 34–36.) On October 17, 2016, Plaintiff received an e-mail notifying it that RDI was in liquidation. (*Id.* ¶ 38.) A few weeks later, on November 3, 2016, Plaintiff was notified by e-mail that Qorvo had purchased physical assets and IP from RDI, hired RDI's technical team, and that "RDI contracts were not included in the sale." (*Id.* ¶ 40.)

Heska subsequently filed suit in Colorado state court against RDI for breach of contract and injunctive relief related to the Agreements. (*Id.* ¶ 55.) Plaintiff was granted an injunction against RDI and subsequently sought third party discovery from Qorvo US to learn more information about the RDI-Qorvo Asset Purchase Agreement ("APA"). (*Id.* ¶¶ 43, 55–57.) Plaintiff sought to determine whether Qorvo US took partially completed Heska/RDI research and continued to work toward completion of the project though it initially was met with resistance. (*Id.* ¶¶ 43–44.) At some point, Qorvo US permitted Heska's technical employees to review portions of the APA who ascertained that Qorvo US acquired "many items of tangible personal property and inventories" including "items that Heska and RDI were working on together pursuant to the RDDA and MSA." (*Id.* ¶ 49.) As a result of that review, Heska alleges that Qorvo US obtained through their acquisition of RDI a prototype, components of an incomplete prototype, and items related to the prototypes. (*Id.* ¶ 50.) Further, Plaintiff alleges "that upon information and belief, Qorvo US transferred or assigned

Case 1:19-cv-01108-LCB-JLW   Document 22   Filed 09/30/20   Page 3 of 21

the tangible assets and intellectual property it obtained from RDI to Qorvo Biotech, who in turn transferred or assigned it to Zomedica." (*Id.* ¶ 52.) Plaintiff also alleges that Qorvo Biotech's parent company, Qorvo, Inc., hired RDI's principal research and development scientist who had directly worked with Heska on the Instrument Product's development for the five years that Heska and RDI collaborated. (*Id.* ¶ 51.)

On or about November 27, 2018, Zomedica announced it entered into an agreement with Qorvo Biotech to develop a veterinary diagnostic tool—later named "Truforma®"—"with the goal to deliver reference-lab performance at the point of care."[3] (*Id.* ¶ 59.) The Amended Complaint alleges that the November 2018 press release indicates that Truforma® relies on a sensor which "is the same kind of resonator developed for the Instrument Product," neither of which relies on the industry-standard optical or fluorescence-based approach. (*Id.* ¶ 64.) Finally, the Amended Complaint alleges that Truforma[(R)]'s "dimensions and shape are virtually identical to the most recent prototype Heska developed with RDI under the RDDA." (*Id.* ¶ 65.)

Plaintiff filed this action, alleging misappropriation of trade secrets, following the development of the Truforma® instrument, which Plaintiff argues builds upon Heska's trade secrets obtained by Qorvo US when it acquired RDI.

## II.    PLAINTIFF'S MOTION TO STRIKE

As a preliminary matter, before addressing the merits of Defendants' Motion to Dismiss, the Court will address Plaintiff's Motion to Strike. Plaintiff moves this Court to

---

[3] While the November 27, 2018, press release refers to the device being able to deliver "point-of-care" diagnostic information, (ECF No. 8-2 at 1), the Court understands this to be the same as "point of treatment"—meaning that rather than requiring an animal to come to an office or clinic setting, veterinary medicine professionals would be able to perform diagnostic testing and analysis where the animal is located or housed.

strike, or otherwise disregard, Section II of Defendants' Reply Brief pursuant to NCMD Local Rule 7.3(h). (ECF No. 18.)

In support of its motion, Plaintiff argues that Defendants' Reply Brief raises new arguments not contained in its prior briefing in violation of Local Rule 7.3(h). (ECF No. 19 at 1–2.) Specifically, Plaintiff argues that Defendants' original brief did not argue, nor did Plaintiff's Response assert or implicate, Heska's ownership of, or claim conversion theory relating to, the alleged trade secrets that are the subject of Plaintiff's Amended Complaint. (*Id.* at 5.) In addition, according to Plaintiff, Defendants introduced two new statutes for the first time to support these new arguments. (*Id.* at 4.) Defendants contend in response that the arguments in their Reply Brief are consistent with arguments contained in their initial brief in support of their Motion to Dismiss. Specifically, Defendants argue that the Factual Background in their initial brief states that: (1) Heska's Amended Complaint reveals that any trade secrets at issue are owned by RDI, rather than Heska; and (2) demonstrated that Plaintiff's claims are based on RDI's purported breach of the Agreements, not misappropriation by Defendants. (ECF No. 20 at 2.)

The Court agrees with Plaintiff. Rule 7.3(h) of this Court's Local Rules governs reply briefs and provides that "[a] reply brief is limited to discussion of matters newly raised in the response." LR 7.3(h). "Members of this Court . . . have consistently held that '[r]eply briefs . . . may not inject new grounds . . . [and that an] argument [that] was not contained in the main brief . . . is not before the Court.'" *Tyndall v. Maynor*, 288 F.R.D. 103, 108 (M.D.N.C. 2013) (quoting *Triad Int'l Maint. Corp. v. Aim Aviation, Inc.*, 473 F. Supp. 2d 666, 670 n.1 (M.D.N.C. 2006)). Rule 7.3 "exists to give the replying party a chance to rebut newly raised arguments,

5

not to give the replying party an unfair advantage in having a chance to make new arguments that should have been raised initially." *Pouncey v. Guilford Cnty.*, No. 1:18CV1022, 2020 WL 1274264, at *5 (M.D.N.C. Mar. 17, 2020).

Here, Defendants' arguments in its original brief are meticulously outlined in Section IV of the Table of Contents accompanied by a detailed Table of Authorities. Neither of the arguments to which Plaintiff refers, nor the authorities that support the new arguments, appear in these sections of the brief. Moreover, nor do Defendants in their Summary of Argument beginning on page one or their detailed Arguments section beginning on page eleven of the original brief address the new arguments. Rather, the identified sections of the original brief are principally related to the alleged failure of Plaintiff to adequately plead misappropriation of trade secrets claims under federal and state statutes. Specifically, Defendants charge that Plaintiff fails to: (1) sufficiently identify the alleged misappropriated trade secrets; (2) adequately plead independent commercial value and reasonable efforts to maintain secrecy; and (3) identify how Defendants misappropriated the alleged trade secrets. (ECF No. 12 at 15–26.) While Defendants in the Factual Background of their original brief refer to ownership and RDI's alleged breach of the Agreements, (*see id.* at 10–13), they never argue these matters as a basis for their Motion to Dismiss though they certainly could have done so. Nor does Plaintiff raise these issues in its Response. Because these grounds are new issues which were not raised before the Reply Brief and leave Plaintiff with no opportunity to respond to the arguments, they must be stricken. *See Penguin Restoration, Inc. v. Nationwide Mut. Ins., Co.*, No. 5:13-CV-63-BO, 2014 WL 715123, at *1 (E.D.N.C. Feb. 21, 2014).

Accordingly, Plaintiff's Motion to Disregard or Strike will be granted with respect to Section II of Defendants' Reply Brief to the extent that it advances the new arguments discussed herein. The Court will not consider the new arguments in evaluating Defendants' Motion to Dismiss.

## III.   DEFENDANTS' MOTION TO DISMISS

Defendants move to dismiss Plaintiff's Amended Complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6). (ECF No. 11.)  Specifically, Defendants contend, among other things, that Plaintiff has: (1) failed to identify the alleged misappropriated trade secrets with sufficient particularity, (ECF No. 12 at 16–18, 22–24); (2) failed to adequately plead that it took reasonable efforts to maintain the secrecy of its alleged trade secrets and that it derived independent economic value, (*id.* at 18–19, 24–25); and (3) failed to state how Defendants misappropriated the alleged trade secrets, (*id.* at 19–21, 25–26).

Plaintiff counters, on the other hand, that it has sufficiently pled claims for trade secret misappropriation under the Defend Trade Secrets Act of 2016 ("DTSA"), 18 U.S.C. § 1832, *et seq.*, the North Carolina Trade Secrets Protection Act ("NC TSPA"), N.C. GEN STAT. § 66-152, *et seq.*, the Michigan Uniform Trade Secrets Act ("Michigan Act"), MICH. COMP. LAWS § 445.1901, *et seq.*, and the Minnesota Uniform Trade Secrets Act ("Minnesota Act"), MINN. STAT. § 325C.01, *et seq.* (ECF No. 16 at 11-26)  Further, according to Plaintiff, Defendants' arguments fail because sufficient particularity at the pleading stage does not require Plaintiff to set forth or define every detail of its trade secret. Plaintiff asserts that the purpose of the pleading standards in the trade secret context is to provide Defendants with notice of what

trade secret they are accused of misappropriating, how it was misappropriated, and what reasonable steps Plaintiff took to keep such secrets confidential.  (*Id.* at 15–19.)

## A.     Standard of Review

A motion to dismiss under Rule 12(b)(6) "challenges the legal sufficiency of a complaint," including whether it meets the pleading standard of Rule 8(a)(2).  *See Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009).  Rule 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), thereby "giv[ing] the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  In assessing a claim's plausibility, a court must draw all reasonable inferences in the plaintiff's favor.  *Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 539 (4th Cir. 2013).  A claim is plausible when the complaint alleges facts that allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  However, "mere conclusory and speculative allegations" are insufficient, *Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013), and a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments," *Vitol*, 708 F.3d at 548 (quoting *Jordan v. Alt. Res. Corp.*, 458 F.3d 332, 338 (4th Cir. 2006)).

## B.     Overview of DTSA and Relevant State Statutes

The DTSA, enacted in 2016, creates a private right of action for the misappropriation of trade secrets. *See* Defend Trade Secrets Act of 2016, Pub. L. No. 114-153, § 2, 130 Stat. 376 (2016) (codified as amended at 18 U.S.C. § 1832, *et seq.*). It was enacted to provide trade secret owners with an avenue to obtain civil remedies in federal court. *See* H.R. Rep. No. 114-529, at 196 (2016). Most States, including the ones at issue in this case—North Carolina, Michigan, and Minnesota—likewise have statutes which govern causes of actions for misappropriation of trade secrets. Unlike some other federal statutes that govern forms of intellectual property such as the Copyright Act,[4] the DTSA does not displace or preempt state law governing protection of trade secrets, with one exception which is not relevant in this case. 18 U.S.C. § 1838. It is common for plaintiffs to choose to bring causes of action for misappropriation of trade secrets under both the DTSA and relevant controlling state trade secrets act.[5] *See, e.g., Radiant Glob. Logistics, Inc. v. Furstenau*, 368 F. Supp. 3d 1112 (E.D. Mich. 2019), *appeal dismissed*, 951 F.3d 393 (6th Cir. 2020); *Prime Therapeutics LLC v. Beatty*, 354 F. Supp. 3d 957 (D. Minn. 2018); *ALDI Inc. v. Maraccini*, No. 5:19-CV-76-FL, 2019 WL 8058085, at *1 (E.D.N.C. May 15, 2019).

---

[4] The Copyright Act preempts all state law rights that are "equivalent" to rights under federal copyright law. 17 U.S.C. § 301(a). The scope of preemption is extensive. *See Pan-Am. Products & Holdings, LLC v. R.T.G. Furniture Corp.*, 825 F. Supp. 2d 664, 690–91 (M.D.N.C. 2011) (stating that the "shadow actually cast by the [Copyright] Act's preemption is notably broader than the wing of its protection.") (alteration in original) (quoting *U.S. ex rel. Berge v. Bd. of Trustees of the Univ. of Ala.*, 104 F.3d 1453, 1463 (4th Cir. 1997)).

[5] Plaintiff asserts its DTSA and NC TSPA claims against all Defendants, its Michigan Act claim against Qorvo Biotech and Zomedica, and its Minnesota Act claim against Qorvo US and Qorvo Biotech. As noted by Defendants, Plaintiff does not expressly provide why or how it determined which Defendants to include in its various state claims. (ECF No. 12 at 5 n.1.) In addition to its DTSA and state law claims, Plaintiff also seeks a preliminary and permanent injunction against all Defendants.

9

"The [DTSA's] definition of misappropriation is modeled on the Uniform Trade Secrets Act, versions of which have been adopted by 48 states." H.R. Rep. No. 114-529 at 199. North Carolina and New York are the only two states that did not adopt the UTSA. *See* Roger M. Milgrim & Eric Bensen, *Milgrim on Trade Secrets* 63-66, 71 (1st ed. 2020). For this reason, the Court will first analyze Plaintiff's claims under the DTSA, Michigan Act, and Minnesota Act jointly, and then separately analyze Plaintiff's claim under the North Carolina statute.

## C.    Misappropriation Under DTSA, Michigan Act, and Minnesota Act

The Court first considers Defendants' Motion to Dismiss Heska's claim of misappropriation of trade secrets under the DTSA, the Michigan Act, and the Minnesota Act. To state a claim for misappropriation of trade secrets under the DTSA, the complaint must allege: (1) the existence of a trade secret; (2) that defendant misappropriated the trade secret; and (3) that the trade secret was used or intended for use in interstate commerce. *Space Systems/Loral, LLC v. Orbital ATK, Inc.*, 306 F. Supp. 3d 845, 853 (E.D. Va. 2018) (citing 18 U.S.C. § 1836(b)(1)); *see also Hunter Structural, P.A. v. Arp Eng'g, Inc.*, No. 3:17-CV-00086, 2018 WL 662367, at *5 (W.D.N.C. Feb. 1, 2018). Under the Michigan Act and the Minnesota Act, a claimant must allege: (1) the existence of a trade secret, and; (2) that a defendant misappropriated the trade secret. *See Dice Corp. v. Bold Techs.*, 556 Fed. App'x 378, 384–85 (6th Cir. 2014); *Electro-Craft Corp. v. Controlled Motion, Inc.*, 332 N.W.2d 890, 897 (Minn. 1983). None of the three statutes provide an express requirement that a plaintiff identify its trade secret with reasonable particularity to state a claim. Thus, to survive a motion to dismiss under the DTSA, Michigan Act, and the Minnesota Act, a claimant "need only plausibly plead" that a

Case 1:19-cv-01108-LCB-JLW   Document 22   Filed 09/30/20   Page 10 of 21

defendant acquired the trade secrets at issue by improper means.  *OROS, Inc. v. Dajani*, No. 1:19-cv-351, 2019 WL 2361047, at *5 (E.D. Va. June 4, 2019).

Here, the Court concludes that Plaintiff's Amended Complaint alleges sufficient facts to plausibly plead a cause of action for misappropriation of trade secrets by Defendants under the DTSA, Michigan Act, and Minnesota Act.

(1)     *Existence of a Trade Secret*

Defendants first argue that Plaintiff has failed to identify the trade secrets it alleges were misappropriated with sufficient particularity.  (ECF No. 12 at 22–24.)  The DTSA defines trade secrets as "all forms and types of financial, business, scientific, technical, economic, or engineering information including . . . designs, prototypes, methods, techniques, [and] processes" that "the owner thereof has taken reasonable measures to keep . . . secret."  18 U.S.C. § 1839(3).[6]  The Michigan and Minnesota Acts similarly include a non-exhaustive list of items that are considered trade secrets and have a component requiring efforts to "maintain [the item's] secrecy."  MICH. COMP. LAWS § 445.1902; MINN. STAT. § 325C.01(5).  All three statutes require that a trade secret "derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information."  18 U.S.C. § 1839(3); *see also* MICH. COMP. LAWS § 445.1902(d); MINN. STAT. §

---

[6]  The DTSA definition of trade secret was intended to be similar to the definition of trade secret found in the USTA.  *See* H.R. Rep. No. 114-529 at 208.  ("While other minor differences between the UTSA and Federal definition of a trade secret remain, the Committee does not intend for the definition of a trade secret to be meaningfully different from the scope of that definition as understood by courts in States that have adopted the UTSA.").

325C.01(5)(ii).  Beyond that, the DTSA, Michigan Act, and Minnesota Act place no definitional limit on the type of information that can potentially be protected as a trade secret.

Plaintiff, in its Amended Complaint, specifically identifies the versions of the prototypes, prototype components, and biological agents related to the prototypes it alleges Defendants misappropriated.  Heska alleges that prior to the acquisition, progress had been mad "on [the] development of the Instrument Product."  (ECF No. 8 ¶ 39.)  Further, "technical knowledge, engineering specifications, prototypes, market knowledge, and intellectual and practical knowhow" had likewise been developed.  (*Id.*)  The Amended Complaint identifies "the Rev 5 prototype of the Instrument Product, numerous Rev 6 components, as well as related parts and biological agents" as the information Defendants allegedly misappropriated.  (*Id.* ¶ 50.)  The DTSA expressly provides that prototypes are classified as trade secrets.  18 U.S.C. § 1839(3).  The Michigan Act and Minnesota Act expressly provide that a device may be classified as a trade secret.  MICH. COMP. LAWS § 445.1902(d); MINN. STAT. § 325C.01(5).  Furthermore, multiple district courts have found that prototypes and prototype designs qualify as trade secrets.  *See Yeiser Resh. & Dev. LLC v. Teknor Apex Co.*, 281 F. Supp. 3d 1021, 1045 (S.D. Cal. 2017) (finding that a complaint's allegation that a Defendant received "videos of new prototypes and samples" sufficiently alleged the existence of a trade secret);  *Leatt Corp. v. Innovative Safety Tech., LLC*, No. 09-cv-1301-IEG (POR), 2010 WL 1526382, at *5–8 (S.D. Cal. Apr. 15, 2010) (finding that misappropriation of matter contained in plaintiff's prototype likely qualified as a trade secret, even though the prototype was not fully developed nor flawless).  Even if this Court had been persuaded by Defendants' arguments that Plaintiff does not identify the precise trade secret that was misappropriated, a

plaintiff can survive a motion to dismiss at the early stages in litigation even if it does not yet know precisely what was taken. *Yeiser Rsch. & Dev. LLC*, 281 F. Supp. at 1048 (recognizing the difficulties plaintiffs experience in proving misappropriation by direct evidence). Here, Plaintiff's identification of the prototype versions, as well as the components and biological agents, was sufficient to put Defendants on notice of the trade secrets it contends are at issue.

Defendants also argue that the Amended Complaint "does not identify any measures Heska has taken to ensure" that the alleged trade secrets "have truly been maintained in confidence and adequately shielded from use by anyone other than RDI," (ECF No. 12 at 6), and suggest that Plaintiff provides merely a conclusory statement that it has taken reasonable measures to keep such information secret, (*id.* at 24). However, Plaintiff alleges that it required RDI to sign "the RDDA and MSA prohibiting the use and disclosure of such trade secrets and other such information." (ECF No. 8 ¶ 75.) "Restricting access to information, implementing confidentiality agreements, and providing physical barriers to access are all reasonable efforts" to maintain the secrecy of a trade secret. *Trans-Radial Sols., LLC v. Burlington Med., LLC*, No. 2:18-CV-656, 2019 WL 3557879, at *16 (E.D. Va. Aug. 5, 2019) (quoting *MicroStrategy, Inc. v. Bus. Objects, S.A.*, 331 F. Supp. 2d 396, 416 (E.D. Va. 2004)).

Defendants also assert that Heska's allegation that it marked materials as confidential was absent from its Amended Complaint. (ECF No. 17 at 10.) Defendants provide no support that there is anything in the DTSA, or Michigan or Minnesota case law, which suggests that marking something as "confidential" is a requirement for finding that a claimant has taken reasonable measures to ensure secrecy. Likewise, the Court has found no such support for such a proposition. Even so, in an attachment to its Amended Complaint, Plaintiff provided

13

a visual of what it purports is a diagram of a prototype of the Instrument Product that was marked as "confidential." (ECF No. 8-3.) To satisfy the reasonable efforts requirement, a plaintiff is not required to show that it utilized the full range of potentially protective measures that might have been available. *See Hertz v. Luzenac Grp.*, 576 F.3d 1103, 1113 (10th Cir. 2009) (construing the Colorado Uniform Trade Secrets Act). The allegations in the Amended Complaint and the exhibits attached thereto, taken as true, make plausible a finding that the efforts taken by Plaintiff to maintain secrecy were reasonable under the circumstances.

Defendants' final argument related to the existence of a trade secret is that Heska failed to adequately plead independent commercial value. (ECF No. 12 at 24–25.) To be protectable, a claimed matter must derive independent economic value, which may be actual or potential, from not being known to or readily ascertainable through proper means by third parties. 18 U.S.C. § 1839(3)(B); MICH. COMP. LAWS § 445.1902(d)(i); MINN. STAT. § 325C.01(5)(i). In other words, "[t]o have independent economic value 'the secret information must afford the owner a competitive advantage by having value to the owner and potential competitors.'" *Giasson Aerospace Sci., Inc. v. RCO Eng'g, Inc.*, 680 F.Supp. 2d 830, 843 (E.D. Mich. 2010) (quoting *Daimler-Chrysler Servs. N. Am., LLC v. Summit Nat'l, Inc.*, 289 Fed. App'x 916, 922 (6th Cir. 2008)) (interpreting the Michigan Act). One way to demonstrate individual economic value is to show that time and money would be required of a competitor to develop the same information. *Electro-Craft Corp.* 332 N.W.2d at 900–01 (construing the Minnesota Act).

In the instant matter, Plaintiff has alleged that the technology implemented in its prototypes of the Instrument Product relies on a resonator that does not rely on "the industry-

14

standard optical or fluorescence-based approach." (ECF No. 8 ¶¶ 18, 64.) Moreover, the Amended Complaint alleges that Plaintiff expended $500,000 on the research and development of the Instrument Product, (ECF No. 8 ¶ 35), and that $1 million in cash and shares valued at $3.9 million were exchanged among Zomedica and Qorvo in order to build the Truforma® platform. (*Id.* ¶ 60.) Thus the allegations in the Amended Complaint construed in the light most favorable to the Plaintiff, and resolving all inferences in its favor, support a determination that Plaintiff has sufficiently alleged facts such that a reasonable fact finder could determine that the trade secrets at issue produced some form of independent economic value.

The Court, therefore, concludes that Plaintiff's Amended Complaint has plausibly alleged sufficient facts to support the existence of trade secrets and to support that Defendants were placed on notice of the nature and substance of the trade secrets claimed by Plaintiff under the DTSA, the Michigan Act, and the Minnesota Act.

(2)     *Defendants' Misappropriation of the Trade Secret*

Defendants argue that Heska's Amended Complaint fails "to allege any facts establishing 'exactly how' Defendants allegedly improperly obtained Heska's trade secrets and/or conspired to use improper means to misappropriate Heska's trade secrets." (ECF No. 12 at 26.) Under the DTSA, "misappropriation" is defined in several ways. First, an "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means" constitutes misappropriation. 18 U.S.C. § 1839(5)(A). "Improper means," in turn, is defined to include "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or

espionage through electronic or other means" but does not include "reverse engineering, independent derivation, or any other lawful means of acquisition." *Id.* § 1839(6). A misappropriation also occurs in instances where one "disclos[es] or use[es]" another's trade secret "without express or implied consent" and the person "knew or had reason to know that the knowledge of the trade secret was . . . derived from or through a person who owed a duty . . . to maintain the secrecy of the trade secret or limit the use of the trade secret." *Id.* § 1839(5)(B). The Minnesota Act and Michigan Act provide similar definitions of misappropriation. MICH. COMP. LAWS § 445.1902(b); MINN. STAT. § 325C.01(3).

Heska's Amended Complaint alleges a number of facts that plausibly demonstrate that Defendants misappropriated the alleged trade secrets as follows: (1) that the Agreements had confidentiality provisions and Qorvo US had knowledge of the terms of the Agreements (ECF No. 8 ¶¶ 71–72); (2) that "Qorvo US, Qorvo Biotech, and Zomedica . . . acquired information and assets RDI did not have authority to transfer," (*id.* ¶ 72); and (3) that "RDI's principal research and development scientist," who worked "directly on [the Instrument Product]" for five years, was hired by Qorvo Biotech's parent company," (*id.* ¶ 51). While Plaintiff does not expressly state that RDI's technical team, namely its principal research and development scientist, provided Defendants with information subject to the alleged confidentiality provisions contained in the Agreements, a reasonable inference can be drawn in favor of Plaintiff to reach this conclusion at this stage.

Though Defendants do not expressly argue that a heightened pleading standard applies, the Court notes that it appears Defendants may be asking for an application of a standard requiring particularity above notice pleading. However, Rule 12(b)(6) does not require

"heightened fact pleading of specifics." *Twombly*, 550 U.S. at 570. Additionally, allegations that Defendants "acquired information and assets RDI did not have authority to transfer" coupled with the allegation that Qorvo US had knowledge of the confidentiality provisions of the Agreements, (ECF No. 8 ¶¶ 72, 95, 102), are sufficient to plausibly allege a claim for misappropriation.

The remaining element required to bring a trade secret claim under the DTSA, that the trade secret was used or intended for use in interstate commerce, is not in dispute in that neither party addresses this issue. Therefore, the Court concludes that given the allegations in the Amended Complaint discussed above, taken as true and resolving all inferences in favor of the non-movant, Plaintiff plausibly alleged misappropriation of trade secrets under the DTSA, the Michigan Act, and the Minnesota Act.

## C. Misappropriation Under the NC TSPA

The Second Claim For Relief of Plaintiff's Amended Complaint alleges that Defendant misappropriated various trade secrets in violation of the NC TSPA, N.C. GEN. STAT. § 66-152. (ECF No. 8 ¶¶ 83–90.) Defendants seek dismissal of this claim as well, asserting similar contentions made in their Motion to Dismiss under the DTSA, Michigan Act, and Minnesota Act. Defendants contend that Heska failed to satisfy the pleading standard under the NC TSPA because it: (1) has not identified any alleged trade secret with the requisite particularity; (2) has failed to adequately plead commercial value and reasonable efforts to maintain secrecy; and (3) has not alleged acts of misappropriation with the requisite particularity. (ECF No. 12 at 15–21.)

Case 1:19-cv-01108-LCB-JLW   Document 22   Filed 09/30/20   Page 17 of 21

As with the DTSA, under the NC TSPA an "owner of a trade secret shall have remedy by civil action for misappropriation of [its] trade secret." N.C. GEN. STAT. § 66-153. "A trade secret is business or technical information that '[d]erives independent actual or potential commercial value from not being generally known or readily ascertainable through independent development . . . and [is] the subject of efforts that are reasonable under the circumstances to maintain its secrecy.'" *Sunbelt Rentals, Inc. v. Head & Engquist Equip., L.L.C.*, 620 S.E.2d 222, 226 (N.C. Ct. App. 2005) (alterations in original) (quoting N.C. GEN. STAT. § 66-152(3)(a)–(b)). Courts consider the following factors in determining whether an item constitutes a trade secret:

> (1) the extent to which information is known outside the business; (2) the extent to which it is known to employees and others involved in the business; (3) the extent of measures taken to guard secrecy of the information; (4) the value of information to business and its competitors; (5) the amount of effort or money expended in developing the information; and (6) the ease or difficulty with which the information could properly be acquired or duplicated by others.

*Id.* (quoting *State ex rel. Utils. Comm'n v. MCI Telecomms. Corp.*, 514 S.E.2d 276, 282 (N.C. Ct. App. 1999)). Similar to the DTSA, "misappropriation" under the NC TSPA is defined as the "acquisition, disclosure, or use of a trade secret of another without express or implied authority or consent, unless such trade secret was arrived at by independent development, reverse engineering, or was obtained from another person with a right to disclose the trade secret." N.C. GEN. STAT. § 66-152(1).

Under North Carolina law, to state a claim for misappropriation of trade secrets a complaint "must identify [the] trade secret with sufficient particularity so as to enable a defendant to delineate that which he is accused of misappropriating and a court to determine

18

whether misappropriation has or is threatened to occur." *Krawiec v. Manly*, 811 S.E.2d 542, 547–48 (N.C. 2018) (internal quotations omitted). "The complaint must also set forth with sufficient specificity the acts by which the alleged misappropriation occurred." *Bldg. Ctr., Inc. v. Carter Lumber, Inc.*, No. 16 CVS 4186, 2016 WL 6142993, at *3 (N.C. Super. Ct. Oct. 21, 2016) (citing *Washburn v. Yadkin Valley Bank & Tr. Co.*, 660 S.E.2d 577, 586 (N.C. Ct. App. 2008). "[A] complaint that makes general allegations in sweeping and conclusory statements, without specifically identifying the trade secrets allegedly misappropriated," is insufficient to state a claim for misappropriation of trade secrets. *Washburn*, 660 S.E.2d, at 585–86.

With respect to Plaintiff's claims under the NC TSPA, Defendants insist that Plaintiff has not provided any allegations establishing that Heska provided RDI with proprietary information that rises to the level of a trade secret and that Heska has only summarily stated that it took reasonable measures to keep such information safe. (ECF No. 12 at 6.) Defendants argue that "identifying a product, rather than any specific trade secrets incorporated therein, does not meet the pleading standard for misappropriation claims." (ECF No. 17 at 4, 7.)

As detailed above, Heska's Amended Complaint identifies its Rev 5 prototype, numerous Rev 6 components, and related parts and biological agents as the trade secrets allegedly misappropriated by Defendants. (ECF No. 8 ¶ 50.) The foregoing allegations, taken as true and drawing all reasonable inferences in favor of Heska, adequately identify the trade secrets Defendants allegedly misappropriated. While it appears Defendants may desire a more particularized description of what specific components of the prototypes Plaintiff asserts constitute trade secrets, at this stage in the litigation the Court finds that Heska's allegations

Case 1:19-cv-01108-LCB-JLW   Document 22   Filed 09/30/20   Page 19 of 21

are sufficient to place Defendants on notice as to the trade secrets they are accused of misappropriating. *See Bldg. Ctr., Inc.*, 2016 WL 6142993, at *2 ("In deciding a motion to dismiss, the Court must always bear in mind that North Carolina remains a 'notice pleading' state, and a plaintiff is only required to set forth '[a] short and plain statement of the claim sufficiently particular to give the court and the parties notice of the transactions, occurrences, or series of transactions or occurrences, intended to be proved showing that the pleader is entitled to relief.'") (citing N.C. GEN. STAT. § 1A–1, Rule 8) (internal citation omitted).

The Court also finds that Heska has sufficiently alleged acts that plausibly demonstrate that Defendants misappropriated the alleged trade secrets or that Defendants have "used them to develop the Truforma® platform." (ECF No. 12 at 6.) As discussed above, Plaintiff's Amended Complaint alleges that: (1) "Qorvo US, Qorvo Biotech, and Zomedica improperly profited from RDI's breach of its contracts with Heska and acquired information and assets RDI did not have authority to transfer despite Qorvo US having done due diligence prior to its asset purchase and being aware of the terms of RDI's contracts with Heska"; and (2) Qorvo's parent company hired "RDI's principal research and development scientist," who worked directly on the Instrument Product project with Heska for five years. (ECF No. 8 ¶¶ 51, 72.)

Defendants assert that Plaintiff "merely alleges that the 'dimensions and shape' of the of the Truforma® instrument are 'virtually identical to the most recent prototype Heska developed with RDI,' and that the Truforma® instrument '<u>appears</u> from press releases to use the same technology and be functionally equivalent to the Instrument Product.'" (ECF No. 12 at 19–20) (citing ECF No. 8 ¶¶ 47, 65) (emphasis in original). However, courts have

determined that evidence that the defendant has produced a product similar to that manufactured by the plaintiff may give rise to an inference of actual use under certain circumstances. *See Engenium Sols., Inc. v. Symphonic Techs., Inc.*, 924 F. Supp. 2d 757 (S.D. Tex. 2013) (finding that the jury could infer from similarities between defendants' and plaintiff's product that defendants used plaintiff's trade secrets to develop their own competitive product).

Review of the allegations in Plaintiff's Amended Complaint, taken in the light most favorable to Plaintiff and resolving all inferences in its favor, leads the Court to conclude that Heska has made sufficient allegations to plausibly allege a claim of misappropriation of trade secrets under the NC TSPA, and Plaintiff's allegations are sufficient to place Defendants on notice as to the trade secrets they are accused of misappropriating.

For the reasons stated herein, the Court enters the following:

## ORDER

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Disregard or Strike, (ECF No. 18), is **GRANTED** with respect to Section II of Defendants' Reply Brief to the extent that it advances new arguments that are the subject of Plaintiff's Motion to Disregard or Strike as discussed herein.

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss, (ECF No. 11), is **DENIED**.

This the 30th day of September 2020.

/s/ Loretta C. Biggs
United States District Judge

21